UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:16-CR-00104-3-JRG |
| | ) |
| KYRI NACOS | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Kyri Nacos' Pro Se Emergency Motion for Immediate Transfer to Home Confinement [Doc. 285] and the United States' Response in Opposition [Doc. 292]. For the reasons herein, the Court will deny Ms. Nacos' motion.

### I. BACKGROUND

In 2017, Ms. Nacos pleaded guilty to conspiring to distribute and possess with the intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). [Am. Plea Agreement, Doc. 64, at 1; Minute Entry, Doc. 68]. At sentencing, her total offense level was 27 and her criminal history category was II. [Statement of Reasons, Doc. 156, at 1]. The Court sentenced her to 90 months' imprisonment, and she is currently serving her term of imprisonment at FCI Tallahassee. [J., Doc. 155, at 2].[1]

Acting pro se, Ms. Nacos, who is thirty-four years of age, now moves the Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic, claiming she has "suffered with COPD since June 24, 2014." [Def.'s Mot. at 5].[2] In response, the United States opposes Ms. Nacos' motion, contending that she has failed to identify an extraordinary and compelling reason for her release and that 18 U.S.C. § 3553(a)'s factors weigh

---

[1] Ms. Nacos is scheduled for release in February 2022.
[2] Ms. Nacos contracted COVID-19 last year but has recovered from it. [Def.'s Med. Records, Doc. 296, at 5, 25]; see [Def.'s Mot. at 4–5].

against her release. [United States' Resp. at 8–12]. Having carefully considered the parties' arguments, the Court is now prepared to rule on Ms. Nacos' motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts her administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that

2

> the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The United States acknowledges that Ms. Nacos has satisfied § 3582(c)(1)(A)'s exhaustion requirement. [United States' Resp. at 5].

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

### A. The First Requirement: Extraordinary and Compelling Circumstances

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

3

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,
   (II) suffering from a serious functional or cognitive impairment, or
   (III) experiencing deteriorating physical or mental health because of the aging process,

4

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

>    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>    (C) Family Circumstances.—
>       (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>       (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>    (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds

5

for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See*

*Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *see also id.* at 1111 (stating that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *see also United States v. Sherwood*, ___ F.3d ___, 2021 WL 345405, at *1, 2 (6th Cir. Feb. 2, 2021) (stating that § 1B1.13 "no longer provides an *independent* basis for denying compassionate release" and remanding the case because the district court had "relied on § 1B1.13(2) as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors (emphasis added) (citation omitted)); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (concluding that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)); *but see United States v. Mullins*, No. 20-5848, at *2–3 (6th Cir. Jan. 8, 2021) (PACER) (vacating this Court's order, which the Court had entered prior to the Sixth Circuit's decision in *Jones*, and remanding the case so that the Court could "recognize its discretion to find extraordinary and compelling reasons other than those listed [in § 1B1.13]").

Even so, the Court, in its discretion, will abstain from an analysis under Application Note 1(A)–(C)—outmoded as it is—and instead turn to the Center of Disease Control's guidelines in considering whether Ms. Nacos' underlying condition, against the backdrop of the COVID-19 pandemic, constitutes an extraordinary and compelling reason for her release. *See, e.g.*, *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 756–57 (E.D. Mich.), *vacated on other grounds*, 815 F.

7

App'x 978 (6th Cir. 2020); *Awshana v. Adduccl*, 453 F. Supp. 3d 1045, 1050 (E.D. Mich. 2020); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *cf. Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating that "courts normally should defer to the reasonable medical judgments of public health officials" (footnote and quotation omitted)). According to the CDC's guidelines, "[p]eople of any age with the following conditions *are at increased risk* of severe illness from" COVID-19:

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Down syndrome
- Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but < 40 kg/m$^2$)
- Severe Obesity (BMI ≥ 40 kg/m$^2$)
- Pregnancy
- Sickle cell disease
- Smoking
- Type 2 diabetes mellitus

*Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021).

Although COPD—the underlying condition that Ms. Nacos complains of—is among the conditions that the CDC identifies as likely to put an individual at a heightened risk of severe illness from COVID-19, Ms. Nacos provides the Court with no medical documentation to substantiate her assertion that she suffers from COPD. According to Ms. Nacos, she "has filed several requests for her medical records through [her facility]" but "with no avail." [Def.'s Mot. at 5]. The United States, however, has obtained her medical records and filed them under seal. They contain no mention of COPD. In addition, COPD is not one of the conditions that Ms.

8

Case 2:16-cr-00104-JRG-MCLC Document 297 Filed 02/18/21 Page 8 of 13 PageID #: 3429

Nacos or her family reported to the probation officer when the probation officer prepared Ms. Nacos' presentence investigation report in 2017, even though Ms. Nacos claims, now, that she has suffered from COPD since June 2014. *See* [PSR, Doc. 105, ¶¶ 65–67 (listing Ms. Nacos' physical health conditions)].

Because the Court is without medical documentation verifying that Ms. Nacos does indeed have COPD, it has no basis to conclude that an extraordinary and compelling reason warrants her release under § 3582(c)(1)(A). *See United States v. Elias*, 984 F.3d 516, 520–21 (6th Cir. 2021) ("[W]e note that [the defendant] did not provide any records in her motion to support that she has hypertension. The district court could have denied [her] motion for compassionate release on this basis." (citations omitted)); *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) ("Although [the defendant] now claims that in the past few months he has developed asthma and 'multiple respiratory issues,' he offers no proof, such as medical records, that would substantiate this claim. His motion, therefore, would fall woefully short of establishing a right to a compassionate release." (footnote and citations omitted)).

But even if Ms. Nacos had identified an extraordinary and compelling reason for her release under § 3582(c)(1)(A), she still would not be entitled to release because she has not shown that § 3553(a)'s factors weigh in favor of it. *See Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." (citations omitted)); *see also Sherwood*, ___ F.3d ___, 2021 WL 345405 at *2 (stating that "[the defendant] must make a

9

compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today" (citation omitted)).[3]

## B. The Third Requirement: Applicable Factors under § 3553(a)

The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010), so it has no obligation to readdress all of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *cf. United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)); *see Jones*, 980 F.3d at 1114 (stating that "[d]istrict courts should consider all *relevant* § 3553(a) factors before rendering a compassionate release decision" (emphasis added) (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007))). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis is adequate. *Jones*, 980 F.3d at 1114 (quotation omitted).

In Ms. Nacos' case, the relevant factors that the Court will address include § 3553(a)(1) and (2):

---

[3] The Court will exercise its discretion to skip an analysis under § 1B1.13 in favor of an analysis under § 3553(a). *See Jones*, 980 F.3d at 1108, 1111 (holding that § 1B 1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release" and stating that district courts, therefore, "may skip step two of the § 3582(c)(1)(A) inquiry"); *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020) ("The government . . . point[s] to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones* . . . . That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. (quoting 18 U.S.C. § 3553(a)(2)(C))).

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1)–(2). In addition to these two factors, the Court will also consider Ms. Nacos' post-sentencing conduct. *See United States v. Allen*, 956 F.3d 355, 358 (6th Cir. 2020) (stating that "courts may consider post-sentencing conduct in assessing the § 3553(a) factors when considering whether to adjust a previously imposed sentence" (citing *Pepper v. United States*, 562 U.S. 476, 487–93 (2011))); *id.* at 357 (recognizing that "[t]he First Step Act does not prohibit courts from considering the factors outlined in § 3553(a)" (citation omitted)).

As for the nature and circumstances of Ms. Nacos' offense, she conspired to distribute and possess with the intent to distribute fifty grams or more of methamphetamine—a serious offense. *See United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000))); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense[.]" (citations omitted)); *see generally United States v. Layne*, 324 F.3d 464, 468 (6th Cir. 2003) (observing that methamphetamine "poses serious dangers to . . . human life" (quotation omitted)); *cf. United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (describing a conspiracy to distribute heroin as "grave").

In addition, the Court has refamiliarized itself with Ms. Nacos' presentence investigation report and her history and characteristics, and the Court is of the conviction that she would pose a danger to the public if it were to order her release. Ms. Nacos admittedly conspired to distribute

11

a large quantity of methamphetamine—between 50 and 150 grams. [Plea Agreement ¶ 4(g); PSR ¶ 14];[4] *cf. United States v. Castro*, 960 F.3d 857, 865 (6th Cir. 2020) (stating that 100 grams of heroin is a "large quantit[y] of drugs"); *United States v. Farmer*, No. 95-6637, 1996 WL 694147, at *4 (6th Cir. Dec. 3, 1996) (describing 150 grams of cocaine base as "a large quantity of narcotics"). Ms. Nacos also has a criminal history that includes previous convictions for drug trafficking and drug possession, as well as a history of drug abuse that includes the use of amphetamine, cocaine, methadone, methamphetamine, and opiates. [PSR ¶¶ 40–41, 66–67, 72–73]. And while serving her current sentence, she incurred a disciplinary infraction for highly disruptive conduct. [Disciplinary Record, Doc. 292-2, at 1]. These facts do not work in favor of her release, and a sentence reduction would not reflect the seriousness of her offense, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes.

Lastly, the Court would be remiss if it did not consider COVID-19's impact on FCI Tallahassee—a consideration that is relevant to § 3553(a)(2)(D). *Jones*, 980 F.3d at 1115. FCI Tallahassee currently has 228 active cases of COVID-19 among the inmates—more than any other federal facility. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Feb. 16, 2021). Still, § 3553(a)(2)(D) is but one factor that the Court must weigh under § 3553(a), and all the other relevant factors weigh against compassionate release. And, importantly, because Ms. Nacos lacks an underlying condition that places her at a heightened risk of severe illness from COVID-19, the Court is unwilling to place greater weight

---

[4] As a general matter, when a defendant does not "produce some evidence that calls the reliability or correctness of the alleged facts [in the PSR] into question," a district court "may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quotation omitted); *see United States v. Roark*, 403 F. App'x 1, 4 n.2 (6th Cir. 2010) ("[T]he PSR *is* evidence, at least in the sense that it may be considered at sentencing." (citing *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992))).

on § 3553(a)(2)(D)—or, more specifically, on the outbreak at FCI Tallahassee. *See United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) ("A district court *may* place great weight on one factor if such weight is warranted under the facts of the case." (emphasis added) (citation omitted)); *see also United States v. Richardson*, 960 F.3d 761, 765 (6th Cir. 2020) ("[H]ow much weight a judge gives to any § 3553(a) factor is 'a matter of reasoned discretion' to which we owe 'highly deferential review.'" (quotation and citation omitted)). In sum, Ms. Nacos fails to demonstrate that § 3553(a)'s factors work in favor of her release.

### III. CONCLUSION

While the Court sympathizes with Ms. Nacos' concerns, she is not entitled to compassionate release under § 3582(c)(1)(A) because she has not identified an extraordinary and compelling reason for her release and the relevant factors under § 3553(a) militate against her release. Her Emergency Motion for Immediate Transfer to Home Confinement [Doc. 285] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
